**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MCM HOLDING AG, | ) |
| | ) |
| Plaintiff, | ) Case No. 17-cv-07342 |
| | ) |
| v. | ) |
| | ) |
| THE PARTNERSHIPS and | ) |
| UNINCORPORATED ASSOCIATIONS | ) |
| IDENTIFIED ON SCHEDULE "A," | ) |
| | ) |
| Defendants. | ) |
| | ) |

**COMPLAINT**

Plaintiff MCM Holding AG ("MCM") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendant Domain

Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of MCM's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using counterfeit versions of MCM's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused MCM substantial injury in the State of Illinois.

## II. INTRODUCTION

3.     This action has been filed by MCM to combat online counterfeiters who trade upon MCM's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including handbags, sunglasses, small leather goods, accessories and other goods, using counterfeits of MCM's federally registered trademarks (collectively, the "Counterfeit MCM Products"). Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine MCM products, while actually selling Counterfeit MCM Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. MCM is

forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit MCM Products over the Internet. MCM has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4.     Plaintiff MCM is a corporation organized and existing under the laws of Switzerland, having a place of business at Bahnhofplatz CH-6300, Zug, Switzerland.

5.     Founded in 1976 in Munich, Germany, MCM stands for "Modern Creation München." MCM grew with the cultural renaissance during the 1970s in Munich and continues to find inspiration in the glamorous, rebellious and innovative spirit of Munich.

6.     MCM prides itself on using the finest quality leathers and materials and its craft is rooted in its heritage of excellence in luggage. MCM manufactures superior quality bags and accessories that are stylish, functional and innovative in both material and design. Today, genuine MCM products are designed and manufactured in Italy, Germany and Korea. MCM is renowned for excellence in European craftsmanship, owing to a heritage of mastery and refinery in workmanship design, leading strong trends with unconventionally stylish designs.

7.     MCM products have become enormously popular and even iconic, driven by MCM's arduous quality standards and innovative design. Among the purchasing public, MCM products are instantly recognizable as such. In the United States and around the world, the MCM has come to symbolize high quality, and MCM products are among the most recognizable handbags and luggage in the world.

8.    MCM has a global presence with over 300 stores in over 35 countries, including flagship boutiques in New York City, Atlanta, Las Vegas, Houston, and on Long Island, New York. MCM engages in wholesale distribution to more than 200 prestigious retailers in 35 countries, including the United States. In Illinois MCM products are sold to consumers through retailers including Bloomingdale's, Saks Fifth Avenue, Neiman Marcus and Nordstrom.

9.    MCM launched a global e-commerce website in 2015 in the United States, with plans to expand to all regions of the world by 2017.

10.    MCM incorporates distinctive marks in the design of its various MCM products, including affixing its well-known "MCM" word mark, "Laurel Wreath" design mark, and "Diamond Pattern" design mark to its products.



Laurel Wreath              Diamond Pattern

11.    These marks have come to represent unparalleled craftsmanship. The letters "MCM" represent the date 1900 in Roman numerals. The 1900s were considered the start of the "age of travel," and the MCM spirit is about the continuation of the age of travel in the jet set of the 1970s and the global nomads of the modern day. The Laurel Wreath mark symbolizes achievement with honor – a symbol of tradition and progress. MCM's Diamond Pattern monogram is borrowed from an ancient French playing card, symbolizing value, strength, and the respect for tradition. A brass plate insignia is found on all heritage collections bags and most products. Each brass plate is identified by a unique number at the bottom.

12.    MCM's trademarks are recognized around the world and throughout the United States by consumers as signifying authentic, high quality MCM products. MCM products

4

typically include at least one of its marks. Often several MCM marks are displayed on a single MCM product

    13.    As a result of its long-standing use, MCM owns common law trademark rights in its trademarks. MCM has also registered its trademarks, including *inter alia,* the MCM word mark, the Laurel Wreath design mark, and the Diamond Pattern design mark, with the United States Patent and Trademark Office. MCM uses its trademarks in connection with the marketing of its MCM products, including the following marks which are collectively referred to as the "MCM Trademarks."

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 2034745 |  | For: Sports gear and accessories for golfing, namely golf bags and golf gloves in class 28. |
| 2034744 |  | For: Clothing, namely, belts made of leather, imitation leather, plastic or textile materials; golf wear; jeans; dresses; trousers; jackets; skirts; blouses; ties; scarves; caps; socks, shoes; and golf shoes in class 25. |
| 2034743 |  | For: Travel bags; suitcases; knapsacks; suit bags; all-purpose sport bags; briefcase-type portfolios; vanity cases sold empty; briefcases; umbrellas; purses; wallets; calling card cases; cases for passports, credit cards, identity cards, driver licenses, business cards, calling cards and memo cards; toiletry bags sold empty; checkbook covers; key cases; dog collars and dog leashes; all made of leather, leather imitation plastics or textile material in class 18. |

| 2034742 |  | For: Eyeglasses, sunglasses and cases therefor in class 9. |
| --- | --- | --- |
| 1485124 |  | For: Eyeglasses in class 9. |
| 1377141 |  | For: Precious jewelry, bracelets, stickpins, lapel pins, wristwatches in class 14.<br><br>For: Pencils and pens, wrapping paper, note pads, calendars and appointment calendars in class 16.<br><br>For: Umbrellas in class 18.<br><br>For: Bathrobes, tee shirts, neckties in class 25. |
| 1095181 |  | For: Hand bags and luggage in class 18.<br><br>For: Clothing-namely, belts, boots and shoes in class 25. |
| 4843488 |  | For: Games and playthings, namely, dice games, beanbags in the form of playthings; gymnastics and sporting articles, namely, springboards, horizontal bars; toys for domestic pets; ornaments for Christmas trees except illumination articles and confectionery; toys, namely, stuffed animals, plush toys; dolls; play balls; play balloons; apparatus for games, namely, bases, bats and balls for playing baseball, bats and balls for |

| | | |
|---|---|---|
| | | playing indoor games; sports gloves especially adapted for sporting purposes, namely, boxing gloves, punching mitts; bags especially designed for skis and surfboards; golf bags with or without wheels; golf gloves; golf clubs; bags for golf clubs; covers for golf clubs; golf tees; bags specifically adapted for fishing leaders; fishing tackle in class 28. |
| 4701887 |  | For: Soaps; perfumery and essential oils, cosmetics for face and body care, hair lotions; dentifrices in class 3.<br><br>For: Eyeglasses, sunglasses, spectacle frames, spectacle cases in class 9.<br><br>For: Precious metals and their alloys; utility objects made of precious metals and their alloys, namely, key rings, ornamental buttons being jewelry, cuff links, tie pins, jewelry charms; jewelry; imitation jewelry, small jewelry made of gemstones, glass, plastic, or metal for personal use; precious stones, rings, necklaces, chain bracelets, bracelets, pendants, broaches, earrings; timepieces and chronometric instruments, watches in class 14.<br><br>For: Pens, ball-point pens, ink pens, fountain pens, pencils and writing and drawing instruments; cases for pens; stationery; notebooks, business card albums, agendas, telephone log books, writing pads, calendars, business cards; writing pads; calendars; business cards; writing pads; stands for pens and pencils, photos, stamps, calendars; desktop document stands; envelope stands; reinforced envelopes; plastic film for use as wrapping and packaging material for general use; packaging material of paper and cardboard; napkins of paper, paper gift wrapping ribbons; document file trays; money clips; cases for driver's licenses; cases for checkbooks in class 16.<br><br>For: Leather and imitation leather; trunks and suitcases; backpacks, sports bags, traveling |

| | | |
|---|---|---|
| | | bags, vanity cases sold empty; small goods made of leather, of imitation leather, of textile or of plastic, namely, purses, wallets, business card cases, credit card cases, key cases; cases for identity cards and credit cards; collars for animals, leashes for animals; parasols, umbrellas and walking sticks; whips, harness and saddlery; purses; coin purses in class 18.<br><br>For: Clothing, namely, coats, scarves, bathing suits, costumes, socks, leg-warmers, leggings, shirts, hoods, shawls, jackets, short coats, ties, vests, bras, stoles, stoles made of fur, skirts, gabardines, gloves, pullovers, trousers, ladies underwear, long trousers, shorts, jackets, pajamas, dresses, pants, caps, berets; hats; belts of leather, imitation leather, plastic and/or textile materials; clothing for sports, namely, t-shirts, uniforms, sweatshirts, sweatpants, sport shirts, polo shirts, jogging suits, sports jackets; footwear, footwear for sports, gloves in class 25. |
| 4990847 | **MCM** | For: Straps for sunglasses and spectacles; cases for optical goods; spectacle frames; special cases for mobile telephones, smartphones, tablet computers, notebook computers, MP3 players, photographic cameras, compact disks (audio-video), global positioning systems; electronic tablets; software and widget software for facilitating commercial transactions and electronic commerce; downloadable computer software applications for promotional purposes; photographic apparatus; digital photographic cameras; photographic film cameras; straps for photographic cameras; adapter rings for photographic camera objectives; grips for photographic cameras; shutters for cameras; bags especially made for photographic apparatus; objectives for photographic cameras; stands, adapters and tripods for photographic cameras in class 9.<br><br>For: Precious metals and their alloys and |

goods made of these materials or coated therewith included in this class, namely, money clips, key rings, pill boxes, ashtrays for smokers, letter openers, pen holders, purses (coin purses), cases for lighters, business card cases, vases, buttons, cuff links, tie pins; jewelry, precious stones; timepieces and chronometric instruments in class 14.

For: Leather and imitation leather, goods made of these materials not included in other classes, namely, boxes for packaging and carrying goods, boxes for travel purposes, hat boxes for travel, trunks and suitcases:; suitcases (carrying cases); backpacks, shopper bags, Boston bags, handbags, briefcases, school bags, satchels, sports bags; vanity cases, not fitted; animal skins; bags for carrying animals, bags for carrying goods, bags for travel purposes; trunks and suitcases; suitcases (carrying cases); backpacks, sports bags; vanity cases, not fitted; golf umbrellas; products made of leather, imitation leather, plastic materials and textile materials, namely, purses, wallets, bags for cosmetic products and make-up, bank bags, wallets with compartments for identity cards and different currencies, washable bags, key cases; umbrellas, parasols and walking sticks; fake fur; dog collars and leashes in class 18.

For: Clothing, namely, pullovers, vests, shirts, tee-shirts, trousers, jackets, suits, coats, rain coats, waterproof jackets, waterproof pants, overcoats, parkas, skirts, dresses, pajamas, dressing gowns, nightgowns, robe, belts for clothing, pocket squares, sashes for wear, shawls, stockings, socks, tights, braces for clothing, suspenders, stoles, underwear, lingerie, bathing suits; footwear, headgear for wear, namely, hats, caps, skull caps, bandanas, berets, fedoras; neckties; scarves; collar protectors for wear; belts; gloves 25.

| | | |
|---|---|---|
| 5088908 |  | For: Sunglasses; straps for sunglasses; cases for spectacles; spectacle frames; mobile phones adapted cases, smart phones, tablet computers, notebook computers, MP3 players, cameras, audio and video compact disks featuring music, global positioning systems; headphones; ear buds; loudspeakers; optical character readers; optical lenses; spectacles for reading; goggles for sports; safety goggles; swimming goggles; goggles for motorcyclists; ski goggles; eyewear clip-ons 9.<br><br>For: Precious metals and their alloys and goods in precious metal or coated therewith, included in this class, namely, key chains in the form of golf clubs, golf balls, golf ball markers, golf shoes, golf gloves and golf umbrellas; jewelry, precious stones; timepieces and chronometric instruments; key rings of precious metal 14.<br><br>For: Paper; drawing paper; cardboard; cardboard goods, namely, cardboard boxes; hand towels of paper; sheets, namely, music sheets, commemorative stamp sheets; printed publications in the nature of books in the field of fashion; pictures; wrapping paper made of cardboard or paper, namely, boxes, containers; stationery 16.<br><br>For: Leather and imitation leather, goods made of these materials not included in other classes, namely, boxes for packaging and carrying goods; animal skins; bags, namely, handbags; trunks and suitcases; carrying cases; backpacks; sports bags; vanity cases, not fitted; golf umbrellas; goods of leather, leather imitation, plastic and textile, namely, purses, wallets, bags for cosmetic products and make up, bank bags in the nature of wallets, wallets with card, identity passport and coin compartments, all-purpose reusable washable carrying bags, key cases; umbrellas; parasols and walking sticks; artificial fur; dog collars and leashes 18. |

|  |  | For: Clothing, namely, sports pants, sports shirts, sports socks, sports skirts, sports T-shirts, golf sweaters, jeans, dresses, trousers, jackets, blouses, shirts, pants, dresses; footwear; headgear, namely, hats, caps; neckties; scarves; mufflers; waist belts; gloves 25. |
|---|---|---|

14.     The above U.S. registrations for the MCM Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The MCM Trademarks have been used exclusively and continuously by MCM, some since at least as early as 1977, and have never been abandoned. The registrations for the MCM Trademarks constitute *prima facie* evidence of their validity and of MCM's exclusive right to use the MCM Trademarks pursuant to 15 U.S.C. § 1057(b). Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the MCM Trademarks included in the above table.

15.     The MCM Trademarks are exclusive to MCM and are displayed extensively on MCM products and in MCM's marketing and promotional materials. MCM products have long been among the most popular handbags and accessories in the world and have been extensively promoted and advertised at great expense. In fact, MCM has expended tens of millions of dollars annually in advertising, promoting and marketing featuring the MCM Trademarks.

16.     MCM products have also been the subject of extensive unsolicited publicity resulting from their high-quality, timeless designs and worldwide renown. MCM is known as being a favorite of celebrities, many of whom are featured in photographs wearing MCM Products. Widespread media coverage for MCM in multiple fashion and entertainment magazines has occurred in the U.S. and elsewhere, including articles in magazines such as,

*Vogue, BAZAAR, Women's Wear Daily,* and *Elle.* Articles about the MCM brand have also been published by *Forbes* and *The Guardian.* This has only added to the outstanding reputation, and significant goodwill associated with the MCM Trademarks.

17. Media exposure for MCM is not limited to print periodicals. MCM Products have also been featured on television shows broadcasted around the world. In November 2014, MCM Products were featured on *America's Next Top Model*, a well-known reality TV show.

18. Because of these and other factors, MCM and its MCM Trademarks have become well known throughout the United States.

19. The MCM Trademarks are distinctive when applied to the MCM products, signifying to the purchaser that the products come from MCM and are manufactured to MCM's quality standards. Whether MCM manufactures the products itself or licenses others to do so, MCM has ensured that products bearing its MCM Trademarks are manufactured to the highest quality standards. The MCM Trademarks have achieved significant recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the MCM Trademarks is of incalculable and inestimable value to MCM

20. Since at least as early as 2015, MCM has operated a website where it promotes and sells MCM products at mcmworldwide.com. Sales of MCM products via the mcmworldwide.com website represent a significant portion of MCM's business. The mcmworldwide.com website features proprietary content, images and designs exclusive to MCM

21. MCM's innovative marketing and product designs have enabled MCM to achieve widespread recognition and have made the MCM Trademarks some of the most well-known marks in the handbag and luggage industry. The outstanding reputation, and significant goodwill associated with MCM have made the MCM Trademarks valuable assets of MCM.

12

22. MCM has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the MCM Trademarks. As a result, products bearing the MCM Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from MCM. MCM is a multi-million dollar operation, and MCM products have become among the most popular of their kind in the world.

**The Defendants**

23. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell Counterfeit MCM Products to consumers within the United States, including the State of Illinois.

24. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the MCM Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for MCM to learn Defendants' true identities and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, MCM will take appropriate steps to amend the Complaint.

13

## IV. DEFENDANTS' UNLAWFUL CONDUCT

25.     The success of the MCM brand has resulted in its significant counterfeiting. Consequently, MCM has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers.  In recent years, MCM has identified scores of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, eBay, AliExpress, and Alibaba, including the Defendant Internet Stores, which were offering for sale, and selling Counterfeit MCM Products to consumers in this Judicial District and throughout the United States.  Despite MCM's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores.  Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.  According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion.  Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

26.     Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal.  Numerous Defendant Domain Names also incorporate the Plaintiffs' Trademarks into the URL, and the Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.  Many Defendants further perpetuate the illusion of legitimacy by

offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. MCM has not licensed or authorized Defendants to use any of the MCM Trademarks, and none of the Defendants are authorized retailers of MCM products.

27. Many Defendants also deceive unknowing consumers by using the MCM Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for MCM products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for MCM products. Other Defendants only show MCM's Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for MCM Products.

28. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal

their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

29.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.   For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names.  In addition, Counterfeit MCM Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit MCM Products were manufactured by and come from a common source and that Defendants are interrelated.  The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and design elements, including content copied from MCM's official mcmworldwide.com website.

30.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts.  For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit.  Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.  Rogue servers are notorious for ignoring take down demands sent by brand owners.  Counterfeiters also typically ship products

in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

31.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of MCM's enforcement efforts.   On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.   Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

32.     Defendants, without any authorization or license from MCM, have knowingly and willfully used and continue to use the MCM Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit MCM Products into the United States and Illinois over the Internet.   Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit MCM Products into the United States, including Illinois.

33.     Defendants' use of the MCM Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit MCM Products, including the sale of Counterfeit MCM Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming MCM

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

34.     MCM hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 33.

35.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered MCM Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The MCM Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from MCM products offered, sold or marketed under the MCM Trademarks.

36.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the MCM Trademarks without MCM's permission.

37.     MCM is the exclusive owner of the MCM Trademarks.  MCM's United States Registrations for the MCM Trademarks (Exhibit 1) are in full force and effect.  Upon information and belief, Defendants have knowledge of MCM's rights in the MCM Trademarks, and are willfully infringing and intentionally using counterfeits of the MCM Trademarks. Defendants' willful, intentional and unauthorized use of the MCM Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit MCM Products among the general public.

38.     Defendants'   activities   constitute   willful   trademark   infringement   and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

18

39.     MCM has no adequate remedy at law, and if Defendants' actions are not enjoined, MCM will continue to suffer irreparable harm to its reputation and the goodwill of its well-known MCM Trademarks.

40.     The injuries and damages sustained by MCM have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit MCM Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

41.     MCM hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 40.

42.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit MCM Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with MCM or the origin, sponsorship, or approval of Defendants' Counterfeit MCM Products by MCM.  By using the MCM Trademarks on the Counterfeit MCM Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit MCM Products.

43.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit MCM Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

44.     MCM has no adequate remedy at law and, if Defendants' actions are not enjoined, MCM will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## CLAIM FOR INJUNCTIVE RELIEF UNDER THE
## ANTICYBERSQUATTING CONSUMER PROTECTION ACT
## (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS OPERATING A
## DEFENDANT DOMAIN NAME INCORPORATING THE MCM TRADEMARKS

45.     MCM hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 44.

46.     MCM is the exclusive owner of the MCM Trademarks.  The U.S. Registrations for the MCM Trademarks (Exhibit 1) are in full force and effect.  Additionally, the MCM Trademarks are highly distinctive and famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

47.     Upon information and belief, Defendants operating a Defendant Domain Name incorporating any of the MCM Trademarks have acted with bad faith intent to profit from the unauthorized use of the MCM Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of the MCM Trademarks.

48.     Defendants have no intellectual property rights in or to the MCM Trademarks.

49.     Defendants' actions constitute willful cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

50.     MCM has no adequate remedy at law, and the registration and use of the Defendant Domain Names incorporating the MCM Trademarks has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to MCM.

## COUNT IV
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, *et seq.*)

51.     MCM hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

52.     Defendants have engaged in acts violating Illinois law, including, but not limited to, passing off their Counterfeit MCM Products as those of MCM, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with MCM products, representing that their products have MCM's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

53.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

54.     MCM has no adequate remedy at law, and Defendants' conduct has caused MCM to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, MCM will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, MCM prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the MCM Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine MCM

product or is not authorized by MCM to be sold in connection with the MCM Trademarks;

b.  passing off, inducing, or enabling others to sell or pass off any product as a genuine MCM product or any other product produced by MCM, that is not MCM's or not produced under the authorization, control, or supervision of MCM and approved by MCM for sale under the MCM Trademarks;

c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit MCM Products are those sold under the authorization, control or supervision of MCM, or are sponsored by, approved by, or otherwise connected with MCM;

d.  further infringing the MCM Trademarks and damaging MCM's goodwill; and

e.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for MCM, nor authorized by MCM to be sold or offered for sale, and which bear any MCM trademark, including the MCM Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2)  Entry of an Order that, at MCM's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to MCM, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of MCM's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a

PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of MCM's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon MCM's request, those in privity with Defendants and those with notice of the injunction including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, and Alibaba, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:

    a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the MCM Trademarks;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the MCM Trademarks; and

    c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

4) That Defendants account for and pay to MCM all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the MCM Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that MCM be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the MCM Trademarks and $100,000 per domain name incorporating any of Plaintiffs' Trademarks pursuant to 15 U.S.C. § 1117(d);

6) That MCM be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 12th day of October 2017.           Respectfully submitted,

/s/ Justin R. Gaudio
Paul G. Juettner
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
pjuettner@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law

*Counsel for Plaintiff MCM Holding AG*